UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
DWAYNE JASON, Individually and on Behalf of All
Other Persons Similarly Situated, et al.
       *Plaintiffs*,

    vs.              MEMORANDUM AND ORDER
                       09-CV-03990 (JG) (ALC)
FALCON DATA COM, INC., and CABLEVISION
SYSTEMS CORPORATION,
       *Defendants*.

----------------------------------------------------------------- X

APPEARANCES:

 KLAFTER OLSEN & LESSER LLP
    Two International Drive, Suite 350
    Rye Brook, NY 10573
 By: Seth Lesser
    Jeffrey Klafter
    Fran L. Rudich
 *Attorneys for Plaintiffs*

 DONOHUE, HYLAND & DONOHUE, P.C.
    1707 Northampton Street
    Holyoke, Massachusetts 01040
 By: Jeffrey S. Morneau
 *Attorney for Plaintiffs*

 PUTNEY, TWOMBLY, HALL & HIRSON, LLP
    521 Fifth Avenue
    New York, New York 10175
 By: Joseph B. Cartafalsa
    Adriana S. Kosovych
 *Attorneys for Defendant Falcon Data Com, Inc.*

 MORGAN LEWIS & BOCKIUS LLP
    101 Park Avenue
    New York, New York 10178-0600
 By: Michael J. Puma
    Adam S. Wexler
 *Attorneys for Defendant CSC Holdings, LLC*

JOHN GLEESON, United States District Judge:

Plaintiff Dwayne Jason ("plaintiff" or "Jason") has brought this putative class and collective action against defendants Falcon Data Com., Inc. ("Falcon") and CSC Holdings, LLC[1] ("Cablevision") (collectively "defendants"), alleging that they failed to pay overtime to him and similarly situated co-workers in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, and New York law. Jason has moved for an order granting conditional certification of an "opt-in" class under 29 U.S.C. § 216(b) consisting of "all persons who are or were formerly employed by Defendants as cable technicians in the United States at any time since September 17, 2006 to the entry of judgment in this case." For the reasons set forth below, the motion is granted.

## BACKGROUND

Falcon performs installation services for Cablevision in Brooklyn and Nassau County. Dep. of Matthew Spiewak ("Spiewak Dep.") 33-34. Jason was employed by Falcon as a technician from 2005 until August 2009. Dep. of Dwayne Jason ("Jason Dep.") 18. Falcon's technicians perform installations and other tasks at customers' homes and at the premises of commercial customers. Dep. of Sam Magliaro ("Magliaro Dep.") 23. The technicians work out of two locations, one in Brooklyn and the other in Farmingdale in Nassau County. Spiewak Dep. 25.

Falcon presently employs about 100 technicians. *Id.* In 2008, Falcon had approximately 50 technicians. *Id.* The vast majority of Falcon's technicians do installation work at residential locations; less than five technicians perform work at commercial premises. *Id.* at 122-23.

---

[1] The complaint incorrectly identifies this entity as Cablevision Systems Corporation.

A.  *Technicians' Duties and Daily Routine*

Falcon admits that the residential technicians all "do the same thing" and all have the same duties and responsibilities. Spiewak Dep. 32-33. Similarly, the commercial technicians all do the "same thing" as each other. *Id.* at 32-33.

Technicians were required to report to Falcon's warehouse at 7:30 every morning to pick up work orders and equipment (and possibly also a vehicle). Jason Dep. 94, 105; Spiewak Dep. 125. Jason would normally spend approximately five or ten minutes at Falcon in the morning, but sometimes he was there longer. Jason Dep. 101-02.

After leaving Falcon in the morning, technicians would drive from one appointment to another and would eventually return to Falcon at the end of the day. *Id.* at 95. There was no set time when Jason's workday would end. *Id.* at 105. The number of jobs would vary each day and the length of Jason's workday would also vary, with some days being much longer than others. *Id.* at 104. Sometimes Jason would work half a day; at other times he would work a 12-hour day. *Id.* at 104-05. All the technicians ended their day at different times, but Jason is not aware of the number of hours worked by the other technicians. *Id.* at 154-55, 222-23.

Technicians were required to return to Falcon at the end of the day to return their work orders, equipment and vehicles. Jason Dep. 95; Spiewak Dep. 143-44. The time Jason spent at Falcon at the end of the day varied daily. Jason Dep. 103. During this time, a Falcon manager would check Jason's work orders. *Id.* at 102. The amount of time Jason spent at Falcon at the end of the day would depend on whether other technicians were there, which would result in him having to wait. *Id.* at 103.

According to Falcon's counsel, Falcon did not use a time clock during at least some portion of the time period at issue.[2] Tr. of Mar. 11, 2011 Oral Argument ("Tr.") at 7. However, Falcon's counsel asserts that Falcon does have documentation indicating when employees picked up their equipment in the morning and when employees dropped off their equipment at the end of the day. *Id.*

During the day, technicians decide on the route to take when driving from job to job. Jason Dep. 105-06. Jobs would be different distances apart and it would take anywhere from five to twenty minutes to get to the next job. *Id.*

Technicians have two-hour or three-hour appointment windows with multiple jobs in each window. Spiewak Dep. 53; Jason Dep. 106; Magliaro Dep. 37. Technicians have discretion to determine the order in which to complete the jobs within each appointment window. Spiewak Dep. 53; Jason Dep. 106-07. After completing an appointment, a technician fills out a work order and writes down the time that he arrived at the appointment and the time he left. Jason Dep. 109, 210; Spiewak Dep. 66.

If a specific job ended early or was cancelled, Jason would call other customers and try to move their appointments up. Jason Dep. 196, 198. Also, when jobs were cancelled, Jason could call a dispatcher to get a new job. *Id.* at 182. At times, Falcon would call him with a new job. *Id.*

Jason would sometimes have up to an hour or two of downtime between jobs, but he was unable to identify how often this occurred. *Id.* at 114, 146-47, 180, 236. When it did occur, Jason could have done whatever he wanted, but he would "keep busy" by helping out

---

[2] Matthew Spiewak, Falcon's head of operations, testified that Falcon uses a time clock and that each technician is required to punch in when he arrives at Falcon in the morning and to punch out at the end of the day. Spiewak Dep. 143-44. The record, however, does not indicate when Falcon began using a time clock.

4

other technicians with whom he was friendly. *Id.* at 114-15, 147, 180-182. Jason would not share in the compensation for his friends' jobs, but they would sometimes help him out in the same way. *Id.* at 114-15. Jason did not know if this was something that other technicians did. *Id.* at 115.

If Jason finished all of his appointments early, he would sometimes have the option to extend his workday by asking Falcon for additional work. *Id.* at 99. At other times, Falcon would simply call him and assign him additional jobs. *Id.* at 200.

The individual technicians decided whether to take a lunch break. *Id.* at 223. Jason would sometimes not take a lunch break because his schedule of appointments was so hectic. *Id.*

B. *Technicians' Compensation*

Jason asserts that he was paid on a piece-rate basis, regardless of the amount of time it took to complete a job. *Id.* at 16, 60, 174, 176. Jason testified that he was never paid overtime. *Id.* at 254. Jason's testimony is consistent with Falcon's weekly payroll reports, which suggest that technicians received only piece-work payments, and were not paid an hourly rate. Although the payroll reports list hourly rates for other employees in a column entitled "pay rate," the payroll reports do not indicate any hourly rate for technicians. Decl. of Seth R. Lesser in Supp. of Pl.'s Mot. for Conditional Certification, Ex. C. Instead, the "pay rate" column simply lists the total compensation earned by a technician in a given week. *Id.* The payroll reports also note that technicians are paid "per job." *Id.*

In contrast to the foregoing, Matthew Spiewak, Falcon's head of operations, testified that Falcon has always paid technicians overtime if they work over 40 hours per week.

5

Spiewak Dep. 180. According to Spiewak, technicians can also receive commissions.[3] *Id.* at 147, 149, 153-54. A technician, however, is not entitled to receive commissions in any given week unless the jobs he works on bring in gross revenue for Falcon that exceeds the regular hourly rate and overtime paid to the technician for that week. *Id.* at 169-74.

In order for Falcon to make the calculations described by Spiewak, it would first have to determine the number of hours worked by each technician. The record, however, does not explain how Falcon determined the number of hours worked by the technicians.

C.  *Department of Labor Investigation*

In October 2008, the Department of Labor ("DOL") began an investigation into whether Falcon was properly compensating its technicians. Decl. of Joseph B. Cartafalsa ("Cartafalsa Decl.") ¶ 2. The investigation ultimately covered a period spanning from February 2007 through February 2009. *Id.* At the time of the investigation, Falcon asserted that its technicians were not entitled to overtime compensation because they were exempt under 29 U.S.C. § 207(i) ("7(i) exemption").[4] In April 2010, the DOL concluded that the investigation did not reveal any minimum wage or overtime violations. Cartafalsa Decl., Ex. A, DOL's Apr. 9, 2010 Letter to Spiewak. However, the DOL also found that Falcon violated the FLSA's recordkeeping provisions by failing to maintain accurate records for "each employee showing the hours and rate of pay worked per week." *Id.*

---

[3]  Cablevision pays Falcon a set amount for each job performed by a technician. Spiewak Dep. 155-56. Technicians can receive, as a commission, 40 percent of the amount Falcon is paid by Cablevision for a job. *Id.* at 157.

[4]  Section 207(i) exempts employees working in "retail or service establishment[s] . . . if (1) the regular rate of pay of such employee is in excess of one and one-half times the [applicable minimum wage], and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services."

D.   *Procedural History*

The complaint alleges that defendants failed to pay the putative collective action members ("putative plaintiffs") overtime for all the hours they worked or, alternatively, failed to pay them premium compensation for the piece work they completed during hours worked in excess of forty hours per week.  Amended Complaint ("Am. Compl.") ¶ 38.  Specifically, it alleges an unlawful failure to compensate Jason for time spent:  (1) reporting to Falcon prior to his first scheduled installation appointment so that he could pick up work orders and equipment; (2) reporting to Falcon after the completion of his last appointment of the day for the purpose of returning equipment and completed work orders; and (3) working through lunch breaks.  Am. Compl. ¶ 35-37.  In response to Jason's allegations, defendants assert, *inter alia*, the affirmative defense that Jason and the putative plaintiffs are exempt from overtime because they qualify for the 7(i) exemption.

The complaint also alleges that Falcon and Cablevision were joint employers under the FLSA and New York Law.   Am. Compl. ¶ 31.  Defendants dispute that they acted as joint employers.

The parties have engaged in limited discovery concerning:  (1) conditional certification of the suit as a collective action under the FLSA; (2) the joint employer issue; and (3) the 7(i) exemption.  A court-approved briefing schedule called for simultaneous briefing of Jason's motion for conditional certification, Cablevision's summary judgment motion on the joint employer issue, and Falcon's summary judgment motion on the 7(i) exemption.  Falcon has since withdrawn its proposed summary judgment motion on the 7(i) exemption issue.  *See* Docket Entry 49.

After the case was reassigned to this Court (following the death of our beloved colleague, Judge David G. Trager), I held argument first on Jason's motion for conditional certification. Cablevision's motion for summary judgment on the joint employer issue remains pending and will be argued on August 12, 2011.

DISCUSSION

A.  *The Conditional Certification Standard*

Under 29 U.S.C. § 216(b), "employees seeking to recover under FLSA's substantive provisions may assert claims on behalf of other 'similarly situated' employees." *Myers v. Hertz Corp.*, 624 F.3d 537, 542 (2d Cir. 2010), *petition for cert. filed*, 79 U.S.L.W. 3698 (U.S. May 24, 2011) (No. 10-1464). "Unlike in traditional 'class actions' maintainable pursuant to Federal Rule of Civil Procedure 23, plaintiffs in FLSA representative actions must affirmatively 'opt in' to be part of the class and to be bound by any judgment." *Id.* In putative FLSA collective actions, district courts have discretion, in appropriate cases, to facilitate notice to potential plaintiffs to inform them of the pendency of an action and of their opportunity to opt in as represented plaintiffs. *Id.* at 554.

The Second Circuit recently provided some guidance on the standard that district courts should apply in determining when to exercise this discretion. *Id.* at 554-55. In *Myers*, the court expressed approval of the two-step approach to certification taken by many district courts. *Id.* In the first step, "the court mak[es] an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id.* at 555. "The court may send this notice after plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* (quoting *Hoffmann v. Sbarro, Inc.*, 982 F.

8

Supp. 249, 261 (S.D.N.Y. 1997)). "The modest factual showing cannot be satisfied simply by unsupported assertions, but it should remain a low standard of proof . . . ." *Id.* (citations and internal marks omitted). Plaintiff's burden at this stage "is minimal because the determination that the parties are similarly situated is merely a preliminary one." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006). "In a FLSA exemption case, plaintiffs [can meet their burden at the first step] by making some showing that 'there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions,' on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." *Myers*, 624 F.3d at 555 (quoting *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008)).

At the second step, which typically occurs after the completion of discovery, *Pineda v. Jim-Mar Consultants, Inc.*, 741 F. Supp. 2d 398, 400 (E.D.N.Y. 2010), the court determines on "a fuller record" whether to de-certify the action by examining "whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs," *Myers*, 624 F.3d at 555. If the court determines that the plaintiffs are not similarly situated, the opt-in plaintiffs' claims may be dismissed without prejudice. *Id.* At the second stage, courts consider: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Hendricks v. J.P. Morgan Chase Bank, N.A.*, 263 F.R.D. 78, 83 (D. Conn. 2009) (quoting *Torres v. Gristede's Operating Corp.*, No. 04-cv-3316, 2006 WL 2819730, at *9-10 (S.D.N.Y. Sept. 28, 2006)). "In determining 'fairness and procedural considerations,' courts consider whether a collective action would lower costs to the plaintiffs through the pooling of resources, efficiently resolve common issues of law and fact, and

9

coherently manage the class in a manner that will not prejudice any party." *Ayers v. SGS Control Servs., Inc.*, No. 03-cv-9077, 2007 WL 646326, at *6 (S.D.N.Y. Feb. 27, 2007) (citation and internal marks omitted).

In determining whether the employees at issue are similarly situated, courts do not address at either stage the merits of a plaintiff's claims, or resolve factual disputes or make credibility determinations. *Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010) (discussing first stage); *Hendricks*, 263 F.R.D. at 83 (discussing second stage).

B.   *Common Unlawful Policy or Plan*

As noted above, the court in *Myers* explained that, "[i]n a FLSA exemption case, plaintiffs [can meet their burden at the first step] by making some showing that there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions, on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." *Myers*, 624 F.3d at 555 (quotation and internal marks omitted). Jason has met his minimal burden under *Myers* to warrant conditional certification. He has made a modest factual showing that all the putative plaintiffs held the same position, performed the same duties, were subject to the same piece-work-based compensation scheme and were not paid overtime. The technicians apparently were not paid any overtime because Falcon believed that they all qualified for the 7(i) exemption. This is sufficient under *Myers* to justify conditional certification.

Jason also alleges that he was not paid for his time reporting to Falcon at the beginning and the end of the day ("reporting time"), and that he regularly worked through his

lunch break and was not compensated for that time ("missed lunch break time").[5] All technicians appear to have been engaged in reporting time at Falcon's warehouse. Thus, these allegations offer a further justification for conditional certification.

C.    *Defendants' Arguments Regarding the Common Unlawful Policy or Plan*

The arguments raised by defendants do not undermine the conclusion set forth above. At oral argument, Falcon asserted that the "most significant issue" in determining the instant motion is the DOL's finding that Falcon did not violate the minimum wage or overtime requirements of the FLSA. Tr. at 5. Falcon concedes that the DOL's finding does not have any preclusive effect on plaintiff's suit. *Id.* at 7-8. Nonetheless, Falcon argues that, for the purposes of determining conditional certification, the DOL's finding establishes that the common polices at issue did not violate the law. This argument, which goes to the ultimate merits of Jason's claims, is unpersuasive. The DOL's finding does not negate plaintiff's modest factual showing of common unlawful policies.

Cablevision also asserted at oral argument that conditional certification should be denied because it will be impossible to collectively adjudicate the 7(i) exemption. Tr. at 15-16. To prove their defense based on the 7(i) exemption, defendants will have to establish, *inter alia*, that, for each workweek at issue, each employee's "regular rate of pay . . . exceeds one and one-half times the minimum wage." 29 U.S.C. § 207(i); 29 C.F.R. § 778.104. In order to determine this, an inquiry into "the hours worked and the compensation earned by . . . [the] employees on a weekly basis" is required. 29 C.F.R. § 778.104. According to Cablevision, because the evidence

---

[5]  The relationship between these allegations and Jason's misclassification argument is not clear. For example, it is not clear whether the inclusion of reporting time and missed lunch break time in the technicians' weekly hours will render the 7(i) exemption inapplicable or whether this is simply additional time for which compensation will be due if the 7(i) exemption is otherwise found inapplicable. It is unnecessary at this point to resolve these questions.

11

regarding the hours worked by each technician will be highly individualized and is not subject to common proof, the 7(i) exemption cannot be collectively adjudicated.

Cablevision raised this argument for the first time at oral argument. Although its brief argued that individualized inquiries will be necessary to determine the hours worked by the putative plaintiffs, it never discussed the 7(i) exemption. Even if this were properly raised, Cablevision's argument is premature and is more appropriately addressed at the decertification stage.[6] *Cf. Beauperthuy v. 24 Hour Fitness USA, Inc.*, --- F.Supp.2d ----, No. 06-cv-715, 2011 WL 750409, at *9-10 (N.D. Cal. Feb. 24, 2011) (finding that resolution of 7(i) exemption required "highly individualized inquiry and could not be accomplished by common proof" and granting motion to decertify class); *Johnson v. TGF Precision Haircutters, Inc.*, No. 03-cv-3641, 2005 WL 1994286, at *5-6 (S.D. Tex. Aug. 17, 2005) (same).

Defendants also contend that because Jason has already received substantial discovery prior to filing the instant motion, the motion should be analyzed under the second, more stringent, step of the *Myers* analysis. I decline to do so. *See Cunningham*, 754 F. Supp. 2d at 646-47 (refusing to apply second-step analysis where discovery was limited to first-step certification and other discrete issues). All of the issues raised by defendants regarding the necessity of individualized inquiries are more appropriately addressed in the context of a decertification motion.

D. *Requirement that Additional Plaintiffs Opt In Prior to Conditional Certification*

Defendants argue that conditional certification is warranted only where there is evidence that additional employees actually desire to opt in and join the suit. The Eleventh

---

[6] At oral argument, Jason's counsel asserted that the arguments raised by Cablevision regarding the 7(i) exemption "are all damages issues." Tr. at 17. Since the putative plaintiffs would be entitled to overtime only if the 7(i) exemption were found inapplicable, the technicians' working hours appear to be relevant to both liability and damages.

Circuit requires that a district court "satisfy itself that there are other employees of the Defendant-employer who desire to 'opt-in.'" *Dybach v. Florida Dep't of Correc.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). The court in *Dybach* imposed this requirement without citation to any authority and without providing any explanation as to why such a requirement is warranted. District courts in this circuit have refused to require plaintiffs to establish that other employees desire to join the suit. *See Aros v. United Rentals, Inc.*, 269 F.R.D. 176, 180-181 (D. Conn. 2010) (collecting cases). As one court has explained,

> [the *Dybach* rule] does not make sense. It would essentially force plaintiffs or their attorneys to issue their own form of informal notice or to otherwise go out and solicit other plaintiffs. This would undermine a court's ability to provide potential plaintiffs with a fair and accurate notice and would leave significant opportunity for misleading potential plaintiffs. That aside, the logic behind defendants' proposed procedure – requiring [the plaintiff] to show that others want to join in order to send them notice asking if they want to join – escapes the Court.

*Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007). Moreover, absent court-supervised notice, current employees may be less likely to opt in for fear of retaliation.

At the time defendants filed their opposition brief, no additional employees had joined Jason's suit. However, defendants' argument is now moot; since oral argument was held, 14 additional employees have opted in and joined Jason's suit.

E.  *Notice Period*

Although FLSA claims are ordinarily governed by a two-year statute of limitations, a three-year statute of limitations is applied where the defendant's violation is shown to be willful. 29 U.S.C. § 255(a). Defendants argue that because Jason has failed to offer any evidence of a willful violation, the court-supervised notice should be sent only to technicians who were employed by Falcon within the past two years, as opposed to the past three years.

13

Defendants, however, offer no authority for such a result, which one court has explicitly rejected. *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 240 (N.D.N.Y. 2002) (refusing to determine willfulness at conditional certification stage). In addition, initial discovery here was limited to three discrete topics and did not cover the issue of willfulness. As such, the notice period will cover the past three years.

## CONCLUSION

This action is conditionally certified as a collective action. The parties are directed to meet and confer regarding the substance of the notice and to bring any disagreements on the subject to the attention of the Court.

So ordered.

John Gleeson, U.S.D.J.

Dated: July 18, 2011
      Brooklyn, New York